Oh, Corsi v. Newsmax Media. Good morning, Ms. Isaac. Good morning, Judge. You can begin. May it please the Court. My name is Melissa Isaac and I represent Jerome Corsi in this matter. We're arguing two main points here today, Your Honors, is that the case was properly ruling by the district court was improper because the Florida's anti-SLAPP statute does not apply in federal court and also, which we say it does not, but if it did, the statute was not complied with by the lower court. It seems to me that the actual malice requirement is a tough one for you here. He is a public figure and I think the actual malice standard is a hurdle for any public figure in a defamation action. However . . . It's just it doesn't seem to me that you've alleged enough to plausibly allege actual malice. The fact that the Newsmax defendants and Fairbanks knew Corsi doesn't mean they didn't know his character for truthfulness was beyond reproach or anything like that. The fact that Newsmax has sold Corsi's books doesn't imply that they entertained serious doubts about the allegation that he plagiarized her reporting. I look at these allegations, I'm looking for where the actual malice is alleged and I'm not seeing it. Ms. Densler, the defendants, they called Mr. Corsi's allegations a conspiracy theorist but Mr. Corsi would offer that those who know Roger Stone would know that that is not a conspiracy theory. The complaint was properly pled under Rule 8 and also, there was an affidavit submitted by Mr. Corsi where he specifies that these people know him, the defendants know him and they know that the allegations made were untrue. Not only are they untrue, they're provably false. Mr. Corsi is not a liar. Mr. Corsi... Just the fact that they know him means that they know that what he says was untrue? The fact that they intimately know Mr. Corsi, that they have worked with Mr. Corsi. I understand that Newsmax sold his books. However, Mr. Corsi did allege and he pled that these things are provably false. What they called him, a liar, a plagiarist, having committed fraud, these are all things that can destroy and discredit him and his trade and profession, which would be defamation per se. Yeah, but I thought, and maybe I'm wrong about this, I thought that this was on a program where it was a sort of point counterpoint and so there was an opportunity to respond to these allegations real time provided by the station. Well, your honors, Mr. Klayman, Mr. Corsi's attorney, was invited on Newsmax America's Talk Live. Well, he was more lured into the program. Now, counsel for defendants say that this was a debate. Mr. Klayman did not know that he was entering into a debate. In fact, the issues that Mr. Klayman thought were to be discussed were the public issues related to the Mueller investigation and the results involving Roger Stone's alleged crimes of perjury, witness tampering, and obstruction of justice. Mr. Klayman was not even made aware that Ms. Fairbanks was going to be on the show until directly before the show went live. So, I understand the way it was presented that this was a debate where they had an opportunity to respond, but Mr. Klayman was not given notice that this was going to be the issue of the show. Yeah. I mean, I understand. I mean, that sounds like a legitimate gripe against Newsmax if you just want to like write them a letter or something. I guess my point is it just seems hard to tag Newsmax with the statements of, I guess it's Fairbanks, given that Newsmax's role was to host these people and give them opportunity to respond. Yes, sir. And Mr. Corsi, again, we do believe that he's properly pled under Rule 8. And also, if they were allowed to proceed to discovery, Mr. Corsi believes that he would have been able to prove the allegations that he did make in his complaint. Again, this is not . . . Mr. Corsi is intimately familiar with Roger Stone. And the fact that Mr. Stone worked in concert with others as joint tortfeasors to defame Dr. Corsi was something that he believes that he could prove. It had the case advanced to the discovery phase. I tell you, the thing I was more interested in here was the attorney's fee issue because I have doubts about whether the anti-SLAPP statute applies. Yes, sir. We contend the anti-SLAPP statute does not apply. Well, for two reasons. First, in this case, as it applied, the Florida statute is, of course, just a garden-variety fee-shifting statute. However, the Florida statute states with specificity that for fees to be assessed, a hearing must be scheduled. It says shall. It doesn't say may. It says shall. Well, there has to be a violation of this statute, this Florida statute. And here's a concern I have. If the statute doesn't apply in federal court . . . We don't think the statute . . . And there can't be an attorney's fee based on it. Can there? No, no, sir. You're absolutely correct. Based on its violation. Yes, sir. It's a violation. I think . . . No, I'm saying there can't be an attorney's fee award based on its violation if it doesn't apply in federal court. That's correct. That's correct. Yes. And so, in order to figure out whether it applies, I mean, we would compare the language of Rule 11, right? Correct. With the fee language in the anti-SLAPP statute, which basically says that reasonable fees would be awarded if, A, the suit is without merit, and B, it's primarily filed because someone exercised the First Amendment right. Right? Yes, that's correct. That's correct. Well, if we're looking under . . . So, if we're looking under Rule 11, then . . . So, the question is whether that captures everything that's in there. And I guess the question then is, under Rule 11, it would have to be without merit and or filed for an improper reason, right? Yes, ma'am. Okay. So, the question then, to me anyway, is if it's primarily filed because somebody has exercised a First Amendment right, does that mean it's filed for an improper reason? Yes, ma'am. It would. And that would directly fall under Rule 11. The anti-SLAPP statute covers means to dispose of cases, whether it be through a 12B6, through summary judgment. It also covers how to recoup attorney's fees. I'm sorry. The rules allow, under Rule 11, where you could recoup attorney's fees. So, they're saying . . . they're calling it meritless . . . meritless, rather. They really aren't the same thing, though, are they? So, Rule 11, in saying that there's an improper purpose, is not the same thing as filing a meritless lawsuit about someone's free speech exercise. But the Florida anti-SLAPP statute says that the suit was filed for the purpose of silencing free speech or infringing on a First Amendment right. So, therefore, it would be an improper purpose under Rule 11. Well, I don't know. I just . . . I guess the problem with the Rule 11 argument, in my mind, is that we've said over and over and over again, and it's just common sense, the law, that if states want to have fee-shifting statutes, then they can have fee-shifting statutes for the causes of action that state law creates. And those fee-shifting statutes would apply in federal court. So, why isn't the way to see this as just a fee-shifting statute, that if you file a meritless defamation lawsuit, then you have to pay the other side's fees? Because it's more of a procedural rule. So, the Florida fee-shifting statute, it gives a procedure to recoup on attorney's fees. The Florida federal . . . I'm sorry, the federal rules already have that. Rule 11 already allows for that. Okay. So, I mean, we've said in like seven different cases that statutes for the recovery of attorney's fees apply in federal court as just a general matter. So, what . . . I mean, what would make this conflict with Rule 11 specifically if just a normal state fee-shifting statute doesn't conflict? Well, I think if we look at most of these states' anti-SLAPP statutes, they deal with shifting burdens. They deal with heightened pleading requirements. Florida's being just a garden variety anti-SLAPP statute really is just a mirror image of the Rule 11. I think . . . Isn't the answer that this attorney's fee provision is tied to a pleading standard as opposed to, well, if you win a claim for . . . under the deceptive trade practices that you're entitled to attorney's fees, the prevailing parties entitled to attorney's fees? Yes, sir. We would offer that Rule 11 always applies to pleading standards. I think if a pleading is considered . . . I'm not even sure you understand what . . . Let me ask a question to follow up on Judge Pryor's question. So, he said, you know, doesn't this statute impose a pleading standard? And he's talking about the part of the statute that says, you know, merits, right? Question is, does that part of the statute impose a pleading standard or is it just if you lose, then you pay the fees? Is there a pleading standard associated with that phrase? The heightened standard, I think, that's imposed in the Florida statute, it goes along with the . . . there's an evidentiary burden that has to be sent . . . Okay. When you say the heightened standard, where are you getting the idea that the Florida anti-SLAPP statute imposes a heightened standard? Because the Florida anti-SLAPP statute says that prior to any fees being assessed or prior to a case being dismissed under the Florida anti-SLAPP statute, that it must be set for a hearing. If it has to be set for a hearing, the parties are required to produce . . . to submit evidence in their respective positions. Now . . . There's a conflict in the . . . with the Florida courts even say this . . . how this statute works, right? Yes. And on the one hand, at least one DCA has said it does create a heightened pleading standard, right? Correct. Correct. The other says it doesn't. That's correct. If it does, it seems to me, then it conflicts with the federal rules and it doesn't apply. Yes, sir. If it doesn't create a heightened pleading standard, then it seems to me it's procedural and it also doesn't apply. Yes, sir. Either way, it seems to me this statute just doesn't apply in federal court. Yes, sir. That's what we submitted. It does not apply. Between . . . we have Rule 8 . . . Can I ask a follow-up question on that? I'm not sure I understand that. So, if it doesn't impose a heightened pleading standard, why isn't it just a fee-shifting statute? Well, there is case law that says it's just a fee-shifting standard. It says that. Okay. Well, if it's just a fee-shifting statute as part of the tort of defamation in Florida law, why isn't that something that applies in federal court? Because we're dealing, I think, specifically with anti-SLAPP as it pertains to this issue. So, I . . . Okay. Well, I mean, here's the thing. This is the text of the statute. The court shall award the prevailing party reasonable attorney's fees and costs incurred in connection with a claim that an action was filed in violation of this section. Yes, sir. You see? Yes, sir. And the section says . . . sets out basically a procedural requirement, right, and says you can't file it if the suit's without merit and it was filed because someone exercised their free speech rights. That's correct. So, the court would have to make a finding that that's specifically why that was . . . Filed. Basically filed, right, which conflicts with Rule 8. The Rule 8 pleading requirements don't have that level of a standard. And also, for the Rule 11, Rule 11 covers all of these things already. Yeah. Okay. Okay. I think we understand your argument. Yeah. Sure. Could you just address the issue of certification? I know we sent you some questions to address. One is whether we should certify this question to the Florida Supreme Court. We've already talked about the split in the intermediate appellate courts. I just want to get your position on that. It's a quick no. I don't think that it needs to be certified to the Florida Supreme Court because the federal rules are clear that there are other avenues for recovery and there are other avenues for dismissal of cases. I think based upon the federal case law and based upon the procedure that's in place with the federal court, I don't think this is necessarily an issue for the state court to decide. This . . . Go ahead. Okay.  Thank you, Your Honor. May it please the court, my name is Mark Lerner and I'm here with my colleague, Julian Jackson Fannin. We represent the Appellee's Newsmax Media, Inc., Christopher Ruddy, John Bachman, and John Cardillo. This case is a public figure's groundless attempt to punish a media outlet for engaging in classic First Amendment protected activity because he didn't like what a guest and only the guest said about him on a live television broadcast. As it did in Michelle versus NYP holdings and numerous other cases, this court should be assuring that speech is not burdened by the defense of a groundless litigation and affirm the decision of the district court in its entirety. The facts here, which I think you're familiar and discussed a little bit before . . . We know the facts and if you want to address whether the complaint plausibly alleges actual malice, you certainly can. I don't think it does. The thing I'm most interested at least, I can only speak for myself, is the attorney's issue. I have serious doubts about whether the anti-SLAPP statute applies in federal court. It seems to me that if it doesn't, that a suit filed in violation of it can't give rise to an attorney's fee award. I'm certainly happy to address the actual malice issue, although we agree, obviously, with your honor and with some of the skepticism addressed by the panel. If there aren't questions on the actual malice, I am happy to move on to the questions that Let me ask you, before you get into the legal merits of the anti-SLAPP, do you really want attorney's fees in this case? Do you want this case to continue with additional litigation? Well, certainly, as I said before, Newsmax is hoping, and the individual defendants who didn't utter any of the allegedly defamatory statements, don't want to be burdened by ongoing litigation. On the other hand, they do believe it makes sense to take advantage and send the message that this kind of lawsuit chills the speech that they should be protected from. So, yeah, I mean, it makes sense here that there is this fee shifting that the Florida legislature has determined is important in this kind of case. And that may- So the question, I guess, the reason I asked that sort of practical question is that one of our options here would be to certify this question to the Florida Supreme Court, which would, if we were to do that, would continue the litigation, right? I mean, you would just, it would just be another court, come back to us, we'd rule again, go back to the district court, all to collect some kind of attorney's fees award against Mr. Corsi. You want to do that? Well, there is a principle at stake here. And we agree, frankly, little we do agree with, with Ms. Isaac in terms of her position, that this- It doesn't need to be certified. Right. It doesn't need to be certified. Exactly. So there should be no continuation of litigation on that front, because all that was applied here, frankly, was Rule 12b-6. We appreciate your confidence in the 11th Circuit. Well, whether it's my confidence in the 11th Circuit or a query as to whether or not there really is a material issue of law that needs to be addressed in order for the 11th Circuit to rule on this issue, in this particular circumstance, the case doesn't turn on the answer to a material state law question, because Florida law doesn't directly impose nor did the defendants seek a higher pleading standard here. The court only ever cited application of Rule 12b-6 in the federal pleading standards under Iqbal and Twombly. There was no burden shifting undertaken. There was no heightened standard applied, nor is actually one called for in the language of the statute. The language of the statute simply prohibits a lawsuit brought without merit, and it provides for a person or entity may move the court for an order dismissing the action or granting final judgment in favor of that person. The person or entity may file a motion for summary judgment together with supplemental affidavit. I mean, this just repeats that, okay, the procedure that's available to you under the is available to you here. You can file a motion to dismiss. You can file a motion for summary judgment. It doesn't stay discovery like some of the other cases do, anti-SLAPP laws do. It doesn't impose. But you would agree that there's a split in authority among the DCAs about what it does and what it doesn't do, wouldn't you? It's not 100% clear to me, honestly, Your Honor, in terms of what it does or doesn't do as far as a heightened pleading standard under the federal rules, right? There's a question in terms of burden shifting and how you determine whether or not the case at issue falls under anti-SLAPP because there is a statement of the case being related to an abridgment of First Amendment rights. And in Gundel, there was a question of going outside the pleadings in order to determine whether or not there was a First Amendment issue. As far as the determination of whether the case has merit, I don't think that there's really any indication that Lamb and Gundel are clearly in opposition. That question ultimately wasn't answered. And again, here, certainly there was no heightened pleading standard applied. It was a simple 12B6 plausibility standard that was applied. And as Your Honor pointed out, Judge Pryor said, it doesn't rise to that level. There's just no plausibility on the notion that a claim of actual... I agree that if, obviously, if there's no actual malice under the regular pleading standards, that's it. But for purposes of our decision on the attorney's fees issue, I mean, there is a split in authority as to whether there's a heightened pleading standard. Is there not? Again, I think the question of the heightened pleading standard goes to the burden as far as establishing that the case falls under anti-SLAPP. That's the most you could say as far as where Gundel and Lamb might be in opposition. So, but again, it's clear on its face here, there wasn't any dispute in this case. There was no heightened pleading standard. But if it doesn't fall under anti-SLAPP, you wouldn't be entitled to your fees, even in... I mean, right? Yes. If it didn't fall under anti-SLAPP, but again, this is clear on its face. It's the allegations of the complaint stated that the basis for the defamation claim was a broadcast from a media outlet that hosted a live public forum. There was nowhere else you had to look. There was no heightened pleading. There was no burden shifting to say, well, plaintiffs met this burden initially. Now let's go to... Sorry, defendants met this burden initially. Now let's go to plaintiff to determine if they can establish that, in fact, it doesn't fall under anti-SLAPP. Because I think the dispute in between Gundel and Lamb in terms of, is there that shifting? Does the plaintiff have to come forward now with evidence to show that it doesn't fall under anti-SLAPP? None of that is an issue here. It is clear on the face of the pleadings that this falls under anti-SLAPP because it relates to the exercise of First Amendment activity. And because it falls under anti-SLAPP, it is, as Judge Brasher said, a garden variety, and as, frankly, Ms. Isaac said, a garden variety fee shifting. And the court's ruling, I think, in Schoen v. Presti really should be controlling. There the 11th Circuit held that Rule 11 addresses punitive sanctions, not fee shifting, and it answers a different question from what Georgia's statute was there. And the Georgia statute at issue provided for compensatory damages for frivolous suits, including attorney's fees, which is much closer to Rule 11, right? There's a frivolousness question built into the Georgia law. And this court still applied that Georgia law, saying that a state's law attorney fees provision are unequivocally substantive. And then there's no question that they should apply. And this has been supported by the Supreme Court numerous times as well. It says that Rule 11 sanctions are not fee shifting provisions. Sanctions under Rule 11 aren't tied to the outcome of litigation. The relevant inquiry is whether a particular filing was well-founded. So the rule only calls for an appropriate sanction, and attorney's fees aren't even mandated. In Business Guides, the Supreme Court said that the main objective of Rule 11 is not to reward parties who are victimized by litigation. It's to deter baseless filings and curb abuses, and it imposes an objective standard on those who sign papers. Rule 11 authorizes sanctions to prevent repeated abuses, which may or may not be monetary sanctions. Florida, in contrast, enacted a policy to prevent anti-slap suits that would, among other things, chill free speech. Whether or not they're frivolous, meritless doesn't necessarily equal frivolous. Under Florida 768-295. But there's something, right, there's something, and so I guess what you're saying, because I asked your friend on the other side this question, is you have to have without merit and primarily because the party exercised its First Amendment rights, right? And so your friend on the other side says the part that says primarily, it was filed primarily because the party exercised its First Amendment rights is necessarily the equivalent of saying that it was filed for an improper purpose. And so your position, I guess, has to be it's not, is that right? That's right. I mean, you know, there may be some incidental overlap, as the courts have talked about, that where a rule is procedural if it affects a substantive right, and here, you know, it's that substantive right that the Florida courts have said you can be free from a suit of defamation that impinges free speech rights, and that should result in fee shifting if it's without merit. And I guess, you know, a lot of, I think even your Rule 11 argument goes to the definition of the phrase without merit, right? I mean, you read without merit to say you lose the lawsuit, and that's a lawsuit without merit. It seems like maybe you could also read it to be something a little bit different to impose some kind of heightened standard. I guess, how do we answer, it seems like we have to answer that question before we get to the Rule 11 issue, right? We have to decide what the standard is before we can decide whether this conflicts with the Rule 11? Well, again, I mean, you know, in order to determine whether the fee shifting applies, right, as your honors have pointed out, you do have to determine whether anti-SLAPP applies, and for it to apply, it has to be an action that was primarily filed because a person or entity exercised the constitutional right of free speech. But that doesn't implicate a heightened pleading standard under the federal rules or equal to Wombly. Your argument is it also isn't about whether it's an improper purpose. It's just really an inquiry into was this a lawsuit about someone speaking? Correct, right. The focus of Rule 11 in terms of curbing abuses in the court and protecting the integrity of the court and making sure that pleadings that are filed are signed knowing that there are, you know, a factual and legal basis and aren't frivolous, it's protecting the integrity of the system. Whereas the Florida statute, as your honor pointed out, is simply a question of is this what this case is about? But it's got to be more than just the fact that the case involves First Amendment issues, right? Because it was filed primarily because of that. I mean, so there has to be, it has to mean something more, otherwise it would just say, and the case involved the exercise of First Amendment rights, right? Well, primarily, I mean, there's a standard of, you know, is the primary basis for this the exercise of First Amendment rights? When I read that, I wondered whether that meant you might have joinder of a lot of claims. Exactly. I mean, you might have some weird, like, consumer fraud or, you know, allegation or something like that. But the thrust of the suit was about someone, just as a but-for kind of matter, was about them exercising speech rights. That's exactly right. I mean, that could certainly be the case. You know, that's certainly one reasonable way of looking at it. But could it also reasonably be the case that it means something else? That, you know, that it was filed sort of in retaliation, which is what your friend on the other side says, which is kind of different, right? Because then, if that's the meaning of it, then it's assuming an improper purpose, right? I mean, again, it depends on your notion of what an improper purpose is, which gets you to the question of rule 11. Well, I mean, you can't, I think it would be an improper purpose to file a suit without merit because you're trying to get back at someone for saying things you don't like. Why would that not be an improper purpose? It may be an improper purpose, but, again, not necessarily under the rubric of rule 11, which I think is aimed at a different kind of relief. And, again, rule 11 is kind of, the sanctions that it provides for are prospective sanctions. They're not retrospective compensatory. Even so, I mean, obviously, it's just talking off the top of my head, it seems to me like a court that finds that there is a meritless suit that's been filed, and it's been filed solely because a person's trying to get back at someone and inflict costs on someone for exercising their First Amendment rights in a way that they didn't like, that that would be an improper purpose. I mean, I can't imagine, it's hard for me to imagine that a court would find that that was a proper purpose. Do you disagree? Yeah, I understand your position, Ronna, that it may be an improper purpose, but that doesn't necessarily mean that the fee shifting under anti-SLAPP, and if this is a garden variety fee shifting, as Judge Brasher has suggested, and that this court regularly recognizes, then it still applies in federal court, and it is a garden variety fee shifting because unlike Rule 11, again, which is prospective- I'm sorry, but that's kind of a different issue, right? I mean, maybe you're saying it's not a different issue. You're saying it doesn't even matter, let's assume it was for an improper purpose. It still doesn't cross over completely with Rule 11 because in Rule 11, we're trying to although I think that's also trying to deter this kind of bad conduct. We're trying to compensate someone for having to have to deal with this, although I think under Rule 11, you'd find that even though it's to deter the conduct, that oftentimes the punishments that will be imposed would be imposed in such a way that you're essentially making whole the party that's had the improper purpose inflicted upon them. I seem out of time, but I'm happy to- You may continue speaking, I've got a question for you. I hear everything and acknowledge all of that, but I think that there's still daylight there that yes, it may be for an improper purpose, and it's possible that Rule 11 award in certain circumstances may have the effect incidentally of compensating somebody, but that still doesn't mean that the central question is the same and the compensation for having been burdened with this kind of suit, even a suit for an improper purpose is a different question. The compensation question is different than a deterrence question. Let me ask you, is there anything in the text of this statute that requires a court to determine the purpose or motive behind why a lawsuit was filed? Only if your honors read- It says that a court has to determine the purpose or motive behind a lawsuit to apply the anti-slip. I mean, the word purpose is not in there, right? The question is whether a file against another person or entity without merit and primarily because such person has exercised the constitutional right of free speech. Yeah, and it's really whether that is that primarily because of language is just but for kind of stuff, right? Or whether it's imposing some kind of retaliatory standard, right? The question I was going to ask you about that is, are you aware of any Florida case law that addresses that question? I am not, your honor. Okay. Is that another reason why we ought to certify it? I don't think so, your honor. I appreciate your time this morning, your honors. How much money are you trying to get in attorney's fees? Well, that's the subject of a separate appeal actually already. Okay. I mean, right now there is a judgment for $50,000. $50,000? I mean, approximately. It's a little bit less than that. Are you sure you want to go to the Florida Supreme Court, come back here, maybe go back to the district court, do all that, just try your $50,000? Well, again, no, we don't want to go to the Supreme Court to do all that because we're requested today. All right. We thank you for your time. Ms. Isaac, you've got five minutes. Yes, sir. In the Carbon case, I think the court properly referenced the Abbas case. In the Carbon case, the court said, but federal rules of procedure 12 and 56 answer the same question about the circumstance under which a court must dismiss a case before trial. The Abbas case talks about an order granting a special motion to dismiss under the Anti-Slapped Act. A court may grant attorney's fees and costs to the prevailing party. The Act does not purport to make attorney's fees available to parties who obtain dismissal by other means, such as Federal Rule 12b6, such as what we have in this case. Therefore, we conclude that the case should be dismissed under 12b6. Attorney's fees under the Anti-Slapped Statute are not available to the defendants in this case. It is our position that Anti-Slapped does not apply, period, does not apply. As far as the argument, Your Honors, that the statute says that it was filed primarily because of someone exercising their First Amendment rights, this case was filed because Mr. Jerome Corsi was, in fact, injured by statements that he could prove to be false. This case was not filed, nor was there a finding that this case was filed primarily for the defamation of speech. You know, it's someone's First Amendment right. Now, don't say purpose. It's because of, right? Because of, yes. Because of someone's exercise of First Amendment rights? Yes, yes. I mean, you filed it because of the exercise of First Amendment rights, right? I filed it because he was damaged by provably false, because the statements were defamatory. You filed it because of speech, someone's speech, on a news show, on TV. I mean, defamation is speech. Defamation is speech, but defamatory statements are not protected speech. And that is why this was filed. There was nothing . . . If we find that the claim of defamation is without merit, then you're left with it being speech and it is protected, right? Well, I understand that, sir, but if we believe this case was allowed to go to the discovery phase, perhaps we would have a different result. I understand that. I don't think that there can be . . . Let's assume for just the sake of the argument, you're going to lose on the, whether there was a plausible allegation of actual malice. Okay? Okay. Then, where are we? Well, if we lose that there was a plausible allegation of actual malice, then I guess we're stuck with the 12B6 dismissal. However, the attorney's fees provision in the district court was awarded pursuant to the Florida Anti-SLAPP statute, which does not apply in this case. It does not apply in federal court, and that is our position there. The federal courts have been clear, even though there's been a split in the circuit, it does not. It does not apply in federal court. We go to the Georgia case, the Carbone case, of course, Georgia's Anti-SLAPP statute . . . None of these cases, like Carbone, none of them have to do with an award of attorney's fees. I understand that, but it has to do with the applicability of the Anti-SLAPP . . . We apply state laws that provide for an award of attorney's fees for claims that arise under state law or fail under state law all the time, right? Yes, sir. Why wasn't the district court to award . . . Why was the district court wrong to award the fees here? Because they awarded the fees pursuant to the Anti-SLAPP statute, the Florida Anti-SLAPP statute, and that's why this is wrong. Of course, we contend that the Anti-SLAPP statute has no place in federal court. It should not be applied in federal court, but even if it was, they did not follow their own statute, which says, required a hearing. There is a higher evidentiary burden for the Florida SLAPP statute that does not apply in federal court. Where do you get the idea . . . I mean, where in the text of the statute does the idea that there's a higher evidentiary burden come from? Because upon the filing of a dismissal under the Florida Anti-SLAPP statute and before the assessment of attorney's fees, a hearing must be scheduled. It says, shall. That is not something that is optional. Yeah, but I mean, but wouldn't you have to have a hearing to assess the attorney's fees? I mean, couldn't you apply 12B6 or Motion for Summary Judgment Rule 56, whatever, to the issue of merit? Of course, you have to have a hearing to assess attorney's fees. I mean, you can't, you know, just magic them out of the air. You have to determine what the attorney's fees are, that kind of stuff. Why does that impose a . . . that idea of having a hearing, why does that say that there's a heightened evidentiary standard on the issue of whether there's merit or not? I guess because the statute . . . there has to be a showing that there is a violation of the Anti-SLAPP statute, that this was filed primarily for . . . because someone exercised free speech. I understand what you're saying, Judge, I do. I think there's a difference here that there has to be a showing of that, but also . I understand what your're saying Judge. Dr. Corsi was in fact, damaged by provably false statements, and it is his position that they are defamatory, and at the very least he should've been allowed to go to the discovery phase, and I think there was an opportunity to amend pleadings. Okay, I think we understand your case, Ms. Isaac. You've gone over, but you've been answering questions from us, so we're going to move to our last case. Thank you.